### STATE of Missouri at the relation of T. J. H., pro ami, Relator,

v.

### The Honorable C. Patrick BILLS, Judge of the Magistrate Court of Clay County, Missouri, Respondent.

#### No. 58361.

Supreme Court of Missouri, En Banc.

Jan. 14, 1974.

Richard J. Habiger, T. E. Lauer, Director, National Juvenile Law Center, Saint Louis, for relator.

William S. Brandom and Thomas E. Allen, Liberty, for respondent, who did not file brief.

SEILER, Judge.

This case involves an original proceeding in prohibition in which the juvenile relator

sought and obtained the rule of the court of appeals, Kansas City district, to prevent the respondent magistrate from the exercise of an unlawful jurisdiction in criminal causes wherein the relator stood accused of possession and sale of marijuana. The petition alleged that the adjudication under Sec. 211.071, RSMo 1969, V.A.M.S., whereby the juvenile court relinquished jurisdiction to the general law, and thus to the magistrate, did not comport with due process in particulars and that the statute itself was constitutionally infirm because lacking standards for that purpose.

The court of appeals, in an opinion by Shangler, J., entered judgment in prohibition against the respondent magistrate, discontinuing the prosecutions pending before him, and ordered him to transfer the custody of relator to the juvenile court which retained exclusive jurisdiction.

A dissenting opinion was filed by Pritchard, J., and the cause transferred here on his certification that the majority opinion was in conflict with this court's decision in In re T.J.H., 479 S.W.2d 433 (Mo. banc 1972), an earlier proceeding in this same case. The cause is thus before us as though here originally, Mo.Const.1945, Art. V, Sec. 10, V.A.M.S. We reach the same conclusion as did the court of appeals and largely for the same reasons, so that it is appropriate for us to borrow liberally from Judge Shangler's opinion, which we have done.

In re T.J.H., supra, determined that the order of the juvenile court relinquishing jurisdiction to deal with the child under the juvenile act was not a final appealable order and that the proper method of review was by a motion in the circuit court under rule 25.06, V.A.M.R., and that appellate review of a juvenile court dismissal is deferred until the primary issue of guilt has been determined by the criminal law.

Respondent asserted in his motion to dismiss that In re T.J.H. discountenanced any form of interlocutory review of the waiver order, whether by ordinary appellate process or by extraordinary writ. The dissenting opinion by Pritchard, J. agreed, stating, " . . . If there existed an insufficiency of evidence to support dismissal of the petitions and order for transfer for prosecution under the general law, that fact could not support issuance of the writ because of any excess of exercise of jurisdiction. Such action could only be an abuse of discretion correctible upon appeal. The majority of the court in In re T.J.H., 479 S.W.2d 433, 435 (Banc Mo.1972), held that remedy to be available, '[T]he exclusive method of reviewing the Juvenile Court's waiver order was a motion to dismiss the indictment in the District Court.' The remedy by appeal is present; it must be deemed to be an adequate remedy, a matter which precludes the issuance of a writ of prohibition . . . "

The issuance of a writ of prohibition is not an appellate process. A proceeding in prohibition is distinct and independent of the original action. It is substantially a proceeding between two judicial authorities, a superior and an inferior, and is a means by which the superior judicial authority exercises its superintendence over the inferior authority to keep it within the bounds of its lawful jurisdiction. State ex rel. City of Mansfield v. Crain, 301 S.W.2d 415, 418 (Mo.App.1957); State ex rel. Boll v. Weinstein, 365 Mo. 1179, 295 S.W.2d 62, 67 (banc 1956); High's Extraordinary Legal Remedies (3rd ed.), p. 715. This concept of ordered exercise of jurisdiction, so dominant in the common law, has been adopted into our constitution (Mo.Const.1945, Art. V, Sec. 4, V.A.M.S.) and laws (chapter 530, RSMo 1969, V.A.M.S.) as the primary means by which this court may exercise its superintendent control over the inferior courts. State ex rel. Boll v. Weinstein, supra, 1.c. 67; 73 C.J.S. Prohibition § 2, pp. 10–14.

It is true that the writ of prohibition is a discretionary remedy and should be denied where an adequate remedy by appeal is available. State ex rel. Berbiglia'

Inc. v. Randall, 423 S.W.2d 765 (Mo. banc 1968); State ex rel. Boll v. Weinstein, supra. However, the right of appeal must be an adequate remedy before its availability will preclude resort to prohibition. State ex rel. Berbiglia Inc. v. Randall, supra; State ex rel. Atkins v. Missouri State Board of Accountancy, 351 S.W.2d 483 (Mo.App.1961). Where, as here, the court is wholly wanting in jurisdiction to proceed in the case, appeal is not an adequate remedy because any action by the court is without authority and causes unwarranted expense and delay to the parties involved.

■ The provisional rule in prohibition issued upon relator's petition, and presumptive proofs, that the order of the juvenile court relinquishing jurisdiction of relator to the general law under Sec. 211.071 was void on its face as a matter of law because it gave no statement of reasons for that determination, in violation of the due process requirements of the United States Supreme Court and this court. In consequence of the invalid waiver order, the petition further asserts, the juvenile relator remains within the exclusive jurisdiction of the juvenile court and is not amenable to the respondent magistrate's criminal process. Thus, relator asserts that respondent lacks jurisdiction in the most fundamental sense, that because relator remains within the exclusive jurisdiction of the juvenile court, the conduct alleged against him is not a matter of cognizance for the criminal law and therefore respondent magistrate has no power to adjudicate the felony complaints nor to bind relator to that determination. Secs. 211.031 and 211.061, RSMo 1969, V. A.M.S.; In re V———, 306 S.W.2d 461 (Mo. banc 1957); State ex rel. D——— V——— v. Cook, 495 S.W.2d 127 (Mo. App.1973). In re T.J.H. does not purpose that the remedy of prohibition be withheld from a petitioner upon such a showing nor that a court exercise any less assiduously its constitutional function of superintendence over courts subordinated to its jurisdiction.

■ There is no danger, as respondent fears, that our holding that a writ of prohibition is available to relator in this case will nullify our decision in In re T.J.H., supra, by making available through use of the extraordinary writs appeal which we there foreclosed. In the case at hand a writ of prohibition is available because relator has shown that the magistrate court is without jurisdiction to proceed further in the case. The juvenile court's order relinquishing jurisdiction did not set forth findings stating the basis of its decision and consequently was not sufficient to transfer jurisdiction to the magistrate court. The writ of prohibition goes to the sufficiency of the order to transfer, not to its correctness. The situation presented is unique and is unlikely to reoccur after our decision in this case. A juvenile court order transferring a juvenile for prosecution under the general law, which is supported by findings in compliance with our holding in this case, will pass jurisdiction of the cause to the adult court and will not be subject to attack on the present grounds by a writ of prohibition.

■ Relator contends the waiver order of the juvenile court is void and cannot confer jurisdiction on respondent because it contains no statement of reasons for the waiver, thereby denying the juvenile fundamental fairness and due process of law. The constitutional principle relator asserts is that announced by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1965) and reaffirmed in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). Kent arose from procedures applicable to the District of Columbia juvenile court. In its opinion, the court observed that the statutory scheme under consideration, much like our own, conferred rights and immunities upon a juvenile. Therefore, a statutory procedure whereby a court may determine to deny such benefits to a juvenile is critically important and is overlain with certain fundamental constitu-

tional limitations, 383 U.S. 1. c. 557, 86 S. Ct. 1. c. 1055:

". . . [W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, *and to a statement of reasons for the Juvenile Court's decision.* We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." (emphasis supplied).

In re Gault, supra, made it emphatically clear that the procedures applicable to a waiver hearing are governed by constitutional principles, 387 U.S. 1. c. 30, 87 S.Ct. 1. c. 1445:

"In Kent v. United States, *supra,* we stated that the Juvenile Court Judge's exercise of the power of the state as *parens patriae* was not unlimited. We said that 'the admonition to function in a "parental" relationship is not an invitation to procedural arbitrariness.' With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth,

we said that 'there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, *without a statement of reasons'* . . . We reiterate this view, here in connection with a juvenile court adjudication of 'delinquency,' as a requirement which is part of the Due Process Clause of the Fourteenth Amendment of our Constitution." (emphasis supplied).

Decisions of the United States Court of Appeals have uniformly acknowledged Kent as a declaration of constitutional principles for waiver hearings, including the due process requirement that the order of waiver contain an adequate statement of reasons for the decision of the court.[1] In addition, this court has said it understood the purpose of Kent and Gault to be "to elevate to the status of constitutional protection the right to a hearing on waiver of jurisdiction, the right to representation at such hearing and the right to a statement of the court's reasons for waiving jurisdiction." Jefferson v. State, 442 S.W.2d 6, 11 (Mo.1969); Coney v. State, 491 S.W.2d 501 (Mo.1973); Arbeiter v. Reagan, 427 S.W.2d 371, 375 (Mo. banc 1968).[2]

1. United States v. Tate, 151 U.S.App.D.C. 261, 466 F.2d 432, 433 (1972); Powell v. Hocker, 453 F.2d 652, 654 (9th Cir. 1971); United States ex rel. Turner v. Rundle, 438 F.2d 839, 841 (3rd Cir. 1971); Kemplen v. Maryland, 428 F.2d 169, 172 (4th Cir. 1970). See also Miller v. Quatsoe, 332 F.Supp. 1269, 1272 (E.D.Wis.1971); Hegwood v. Kindrick, 264 F.Supp. 720, 725 (S.D.Tex.1967).

2. We are unable to agree with the implication raised by the dissent in the court of appeals that the Kent case is limited to its particular facts; that the failure of the juvenile court in that case to make findings was of no significance and that lack of findings is important only where there is no actual hearing. The dissent speculates that had there been a hearing in the juvenile court in Kent and had counsel been given access to the social service files, the United States Supreme Court would not have granted certiorari, despite the failure of the juvenile court to make findings in its order waiving jurisdiction. As the dissent recognizes, this is speculation. The

fact is that in Kent, the court said it was remanding the case "on account of the procedural error with respect to waiver of jurisdiction", 383 U.S. l.c. 552, 86 S.Ct. l.c. 1052, it three times refers to the necessity of a statement of reasons for transfer of the juvenile despite the fact the juvenile court had promulgated a detailed statement of the criteria it would follow in determining waiver requests, and in addition to what Judge Shangler quoted from the Kent decision set forth above, the court said at 383 U.S. 561, 86 S.Ct. 1057:

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor.

The Missouri statute relating to the juvenile court's relinquishment of jurisdiction in this situation, Sec. 211.071, supra, speaks in terms of findings and states, ". . . the petition may be dismissed and such child or minor may be prosecuted under the general law, whenever the judge . . . *finds* that such child or minor is not a proper subject to be dealt with under the provisions of this chapter," (emphasis added). It is interesting to note that the proposed rules recently drafted by the Missouri Committee on Rules of Practice and Procedure in Juvenile Courts require findings to support the juvenile court's waiver of jurisdiction.[3] This is significant in that the committee is made up of persons keenly aware of the day to day problems and workings of juvenile courts, including juvenile court judges and commissioners, other circuit judges, and lawyers active in family and juvenile practice. The proposed rules are the result of nearly four years of study and drafting by the committee.

The order of waiver in the present case that "the petitions here . . . be dismissed and that said child T.J.H. be prosecuted under the general law" is devoid of any basis for the court's critical decision to relinquish jurisdiction over the child. All that was said by the court orally at the conclusion of the hearing was that the motion should be sustained, the petition ordered dismissed, and the boy referred to the custody of the sheriff, and, as stated earlier, the formal record entry recites that the petitions "be dismissed and that said child (naming him) be prosecuted under the general law." Although Kent "does not specify any particular form or require detailed findings of fact", Coney v. State, supra, the order of waiver "must set forth the basis for the order with sufficient specificity to permit meaningful review." Kent v. United States, supra, 383 U.S. 1. c. 461, 86 S.Ct. 1. c. 1057.

The transcript contains numerous references by the juvenile officer and the deputy to the seriousness of the charges made against the juvenile relating to drugs. However, as seen from Sec. 211.-031, RSMo 1969, V.A.M.S. the fact a charge is serious does not mean it cannot or should not be handled in juvenile court. Under Sec. 211.181, RSMo 1969, V.A.M.S., the juvenile court may make disposition of juveniles charged with serious offenses as well as less serious ones. We do not know whether the juvenile court acted on the ba-

. . . [I]t must set forth the basis for the order with sufficient specificity to permit meaningful review."

3. Rule 9.04 pertains to dismissal hearings in which the court determines whether the juvenile is a proper subject to be dealt with under the provisions of the juvenile code. Paragraph 4 of the rule is set forth below. "4. After the conclusion of the hearing if the court finds that the juvenile is not a proper subject to be dealt with under the provisions of the Juvenile Code, it shall order the petition dismissed to permit the juvenile to be prosecuted under the general law, and shall enter the reasons for its decision. A copy of the petition and the order of dismissal shall be sent to the prosecuting attorney."
   Comments to the rule point out that, ". . . [P]aragraph 4 follows Kent v. United States, 383 U.S. 541 [86 S.Ct. 1045, 16 L.Ed.2d 84] (1966), which mandates that the court state its reasons for dismissing a juvenile court petition to permit a juvenile to be prosecuted criminally."
   Numerous standards and uniform laws drafted for juvenile courts require findings to support an order dismissing a juvenile proceeding and transferring prosecution to the general law. See, Standards for Juvenile and Family Courts, Children's Bureau Publ. No. 437–1966; Uniform Juvenile Court Act, Handbook of the National Conference of Commissioners on Uniform State Laws, 270–271 (1968); and see National Probation and Parole Association Standard Family Court Act, Secs. 19, 24, 28 and Standard Juvenile Court Act, Secs. 19, 24, 28, 5 N.P. P.A. Journal (1955) cited in In re Gault, supra, at p. 563, n. 102 [86 S.Ct. 1045].
   Some juvenile judges in Missouri now state their reasons for dismissal of a petition in the form of specific findings of fact, as was noted by Hon. Robert G. J. Hoester, judge of the juvenile court of St. Louis County, in a paper delivered to the Juvenile Judges Section of the Missouri Judicial Conference at their summer conference, 1973.

sis that the petition should be dismissed because the charge was a serious one, without more. The juvenile officer's report made under Sec. 211.081, RSMo 1969, V. A.M.S. is part of the record. It contains no investigation as to the drug charges— merely a recital of the alleged charges. There are numerous references in the record to the fact the county had no resources available for handling juveniles other than informal adjustments, but what part, if any, this played in the court's decision is not shown. The record shows that his previous referrals were for offenses in the nature of juvenile delinquencies, rather than outright criminality, and shows further that the juvenile had kept his monthly probation appointments and had not violated the law over a period of the last twenty months prior to the current charges, although during recent months he had violated the nonsmoking rule in high school and had four times been suspended therefor. His mother expressed the opinion that lack of maturity was the source of his school and behavioral problems. The juvenile officers expressed no opinion on this. It was undisputed that he lived at home with his parents, brother and two sisters, in a good neighborhood, that his demeanor was quiet, that he did his family chores, and that his parents were employed and at least of modest financial means. The juvenile officers were divided on whether his probation should be continued. Both agreed his rehabilitation depended largely on the juvenile himself. The juvenile had exercised his constitutional right not to make a statement and it is apparent from the record that this exercise was believed by the juvenile officers to have prevented their obtaining his cooperation and hindered their ability to deal with him on an informal basis. The juvenile officers had not on any occasion brought relator before the juvenile judge, although they agreed this frequently is helpful to the child. In short, the record contains many facts, but the order does not fix on any of them or inform the juvenile or a reviewing court of the reasons for dismissal of the petition.

■ A reviewing court will not be remitted to the assumption that a juvenile court which has not expressed the basis for the order of waiver has found the facts necessary to such a judgment. Civil rule 73.01(b), providing for that treatment of a court tried civil case, is not applicable by its terms to a juvenile court order on a motion to dismiss. That rule, with its accompanying subsection 73.01(d) pertaining to review on appeal, permits de novo review on the law and the evidence and is an outgrowth of the difference in review between a jury tried case and a court tried case. It is applicable to trial by the court on all issues presented in the case resulting in a final decision, not to a juvenile court's disposition of a motion filed in a case pending before it.

We have searched the transcript of the waiver proceedings but in vain, for some expression by the court of the basis for the order relinquishing jurisdiction. We hold the order of waiver was ineffective to divest the juvenile court of the exclusive jurisdiction over relator under the juvenile law or to invest respondent with jurisdiction over relator under the general law. Therefore, juvenile relator is not properly before respondent magistrate. It thus becomes the duty of respondent magistrate to transfer the custody of relator, forthwith and directly, to the juvenile court of Clay County, which retains exclusive jurisdiction over relator under the juvenile law, Sec. 211.061(2), RSMo 1969, V.A.M.S. and it is so ordered. The juvenile court shall afford the juvenile and the juvenile officers an opportunity to offer additional evidence, if so advised, with regard to whether the child is a proper subject to be dealt with under the juvenile law. The juvenile court shall then, based on all the evidence make findings, in accordance with our decision herein, as to whether said juvenile is a proper subject to be dealt with under the

juvenile act and act on the petition accordingly.

Respondent's motion to dismiss the proceedings is denied. The preliminary rule is made absolute and final judgment in prohibition is entered against respondent magistrate.

MORGAN, HOLMAN, BARDGETT, HENLEY and FINCH, JJ., concur.

DONNELLY, C. J., concurs in separate opinion filed.

DONNELLY, Chief Justice (concurring).

It seems to me that when a Juvenile Court judge enters an order relinquishing jurisdiction to deal with a child under the Juvenile Code and exposing him to proceedings under the general criminal law, at least two questions arise:

(1) the *procedural question*: does the form of the order satisfy the requirements of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84?

(2) the *substantive question*: did the Juvenile Court judge abuse his discretion in ruling, on the facts before him, that the child "is not a proper subject to be dealt with" under the Juvenile Code?

In re T.J.H., 479 S.W.2d 433 (Mo. banc 1972), held that the order of the Juvenile Court relinquishing jurisdiction to deal with the child under the Juvenile Code was not a final appealable order and that neither question (*procedural or substantive*) would receive appellate review unless the child were convicted under the general criminal law and appealed. In re T.J.H., supra, did recognize a need for preliminary review of the *procedural question*, if desired, before putting the child to trial under the general criminal law and, therefore, suggested the Kent v. Reid device (Kent v. Reid, 114 U.S.App.D.C. 330, 316 F.2d 331 (1963)) of permitting the child to raise the *procedural question* by filing a motion under Rule 25.06.

I understand the opinion adopted today to hold that the child may raise the *procedural question* in an appellate court by filing an application for writ of prohibition. I do not object. However, I would discontinue the use of the Kent v. Reid device in Missouri and would overrule In re T.J. H., supra, to that extent. The Kent v. Reid device is no longer needed to raise the *procedural question*. It was never intended that it be used in Missouri to raise the *substantive question*.