**STATE of Missouri ex rel. K\_\_\_\_ D. C\_\_\_\_, Relator,**

v.

**Honorable Fred W. COPELAND, Circuit Judge, Respondent.**

No. 18397.

Missouri Court of Appeals, Southern District, Division One.

May 4, 1993.

Marianne Marxkors, St. Louis, for relator.

Michael B. Hazel, Pros. Atty., Pemiscot County, Caruthersville, for respondent.

CROW, Presiding Judge.

The genesis of this original proceeding in prohibition is a murder and robbery allegedly committed by Relator, K＿＿ D. C＿＿, on August 1, 1988, in Pemiscot County. Relator was then 14 years of age.[1]

The question presented is whether the order of the juvenile court permitting Relator to be prosecuted under the general law is void because the juvenile court failed to comply with Rule 118.03, Rules of Practice and Procedure in Juvenile Court (1988), set forth *infra*. The rule requires that the written report mandated by § 211.071.6, RSMo 1986, set forth *infra*, be made available to counsel. An abbreviated history of the underlying litigation is helpful in framing the issue confronting us.

On August 2, 1988, the day after the alleged crimes, a juvenile officer filed a petition in the Juvenile Court[2] of Pemiscot County, alleging Relator was in need of care and treatment because he committed the murder and robbery, and also committed armed criminal action by using a revolver in the murder. The juvenile court appointed counsel for Relator.

On a later date, not shown by the record, the juvenile officer filed a motion per § 211.071, RSMo 1986,[3] to dismiss the petition so Relator could be prosecuted under the general law.

On September 2, 1988, the juvenile court held a hearing on the juvenile officer's motion to dismiss. Relator was present in person and with appointed counsel ("D＿＿"). At the outset, the juvenile court stated:

> Let the record ... show that after listening to the evidence here today, the Court will not at that time make a ruling, but will rather take the matter under advisement pending receipt of the report required by Section 211.071, Subdivision 6, and that report presumably will be prepared in due course.

---

1. Relator was born April 10, 1974.

2. Section 211.021(3), RSMo 1986.

3. Section 211.071, RSMo 1986, reads, in pertinent part:

    1. If a petition alleges that a child between the ages of fourteen and seventeen has committed an offense which would be considered a felony if committed by an adult, the court may, upon ... motion by the juvenile officer, ... order a hearing and may, in its discretion, dismiss the petition and such child may be transferred to the court of general jurisdiction and prosecuted under the general law.

    ....

    6. A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile justice system. These criteria shall include but not be limited to:

    (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;

    (2) Whether the offense alleged involved viciousness, force and violence;

    (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

    (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;

    (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

    (6) The sophistication and maturity of the child as determined by consideration of his home and environmental situation, emotional condition and pattern of living;

    (7) The program and facilities available to the juvenile court in considering disposition; and

    (8) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court.

    7. If the court dismisses the petition to permit the child to be prosecuted under the general law, the court shall enter a dismissal order containing:

    (1) Findings showing that the court had jurisdiction of the cause and of the parties;

    (2) Findings showing that the child was represented by counsel;

    (3) Findings showing that the hearing was held in the presence of the child and his counsel; and

    (4) Findings showing the reasons underlying the court's decision to transfer jurisdiction.

    ....

Lawyer D___ registered no protest re-regarding that procedure.

Testimony was presented by four witnesses. At the conclusion of the hearing, the juvenile court announced:

> The Court will take this matter under advisement pending receipt of the appropriate report. Court's adjourned.

Again, lawyer D___ voiced no objection.

On September 6, 1988, the juvenile officer filed a written report "prepared in accordance with Section 211.071 RSMo." That same day, the juvenile court entered an order dismissing the juvenile officer's petition so Relator could be prosecuted under the general law.

Relator was thereafter charged with four felonies in the Circuit Court of Pemiscot County: (1) murder in the first degree, (2) armed criminal action by committing the murder with a deadly weapon, (3) robbery in the first degree, and (4) armed criminal action by committing the robbery with a deadly weapon. The case was subsequently sent to New Madrid County on change of venue.

On October 20, 1989, Relator appeared in the Circuit Court of New Madrid County with his lawyer ("C___"), an assistant public defender. The prosecutor announced a plea agreement had been reached whereby (1) Relator would plead guilty to murder in the second degree and robbery in the first degree, (2) the prosecutor would recommend concurrent life sentences for each of those crimes, and (3) the two counts of armed criminal action would be dismissed.

The trial court asked lawyer C___ whether he had explained the range of punishment to Relator. C___'s response included this: "I explained to [Relator] that Murder in the First Degree, as it was charged in the original information, provided for the punishment of life in prison without parole or probation, and no release

except by order of the Governor, or in the alternative, the death penalty."

Relator pled guilty per the bargain; the trial court imposed the agreed sentences.

On January 18, 1990, Relator filed a pro se motion in the trial court per Rule 24.035, Missouri Rules of Criminal Procedure (1990), to vacate the conviction. Among the allegations was this averment: "I pleaded guilty because my lawyer told me I would get the death penalty."

An amended motion, filed later by counsel, alleged, *inter alia*, that lawyer C___ rendered ineffective assistance by failing to accurately advise Relator of the potential punishment should he be found guilty of murder in the first degree. Citing *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988),[4] the amended motion stated that because the murder was committed when Relator was 14, the death penalty was not a possible punishment. The amended motion added that Relator's decision to plead guilty was premised on his desire to avoid death, and that had he been properly advised of the range of punishment, he "would have elected to proceed to trial in this matter."

The trial court denied postconviction relief without an evidentiary hearing. Relator appealed to this Court; the appeal was numbered 17210.

In this Court, the State, by the Attorney General, filed a "Motion for Reversal and Remand" stating that at the time Relator pled guilty, neither lawyer C___, the prosecutor, or the trial judge realized Relator could not be sentenced to death for murder in the first degree. The State's motion continued:

> [Relator] pled guilty to murder in the second degree only after being misinformed about the possibility of receiving the death penalty for the murder in the first degree charge and thus it cannot be said that his guilty plea was knowingly,

---

4. By a plurality opinion in *Thompson,* the Supreme Court of the United States barred the State of Oklahoma from carrying out a death sentence against a defendant for a murder he committed at age 15. Four justices held the sentence was prohibited by the Eighth and Fourteenth Amendments to the Constitution of the United States. 487 U.S. at 838, 108 S.Ct. at 2700. Another justice concurred in the result, "on narrower grounds." 487 U.S. at 849, 108 S.Ct. at 2706. *Thompson* was decided June 29, 1988, some 16 months before Relator pled guilty.

intelligently and involuntarily [sic] entered.

The State prayed this Court to reverse the judgment in the 24.035 proceeding and remand it with directions that the trial court "grant [Relator] his Rule 24.035 motion."

On July 8, 1991, this Court, in an unreported order in appeal 17210, granted the State's motion, reversed the judgment in the postconviction proceeding, and remanded that proceeding to the trial court.

Relator commenced the instant prohibition action in this Court on September 28, 1992, averring he now faces "charges of murder in the first degree, robbery in the first degree, and two counts of armed criminal action" in the Circuit Court of New Madrid County, arising from the events of August 1, 1988. Respondent, The Honorable Fred W. Copeland, is the circuit judge before whom the charges are pending.

Relator maintains Respondent lacks jurisdiction to proceed with trial in that the report required by § 211.071.6[5] was not submitted until after the September 2, 1988, hearing (described in the fifth paragraph of this opinion). According to Relator, this violated his rights to due process of law and effective assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and sections 2, 10 and 18(a) of Article I of the Constitution of Missouri (1945).

Rule 118 (referred to in the second paragraph of this opinion) pertains to dismissal of a petition against a juvenile in juvenile court to allow prosecution of him under the general law. Rule 118.03(a) provides that when the juvenile court orders a hearing on that issue, the juvenile officer "shall make an investigation to aid the court in determining whether the juvenile is a proper subject to be dealt with under the provisions of the Juvenile Code." Rule 118.03(b) reads:

A written report of the investigation, including all social records, shall be made to the court, and, prior to the hearing, may be made available to the parties and shall be made available to counsel.

Citing *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), Relator asserts that in a proceeding to determine whether juvenile jurisdiction shall be waived, thereby allowing the juvenile to be tried as an adult, the juvenile has a right of access by his lawyer to the social records and reports considered by the juvenile court.

In *Kent,* a 16–year–old suspect was apprehended for housebreaking, robbery and rape in the District of Columbia. Under the applicable Code, he was subject to the exclusive jurisdiction of the juvenile court. When it became apparent the juvenile court might waive jurisdiction and remit the suspect to the adult court for trial, the suspect's lawyer moved the juvenile court for a hearing on the waiver issue and also moved for access to the file compiled by court staff regarding the suspect (who had been on juvenile probation since age 14).

The juvenile court ignored the motions, held no hearing, and entered an order waiving jurisdiction. The order contained no findings and no reasons for waiver. The suspect was ultimately convicted in adult court of housebreaking and robbery. After an unsuccessful appeal to the United States Court of Appeals for the District of Columbia Circuit, the suspect obtained review by certiorari in the Supreme Court of the United States. The Supreme Court held the juvenile court order waiving jurisdiction was invalid. 383 U.S. at 552, 86 S.Ct. at 1053. Although declaring that the Juvenile Court Act applicable in the District of Columbia and the decisions of the United States Court of Appeals for the District of Columbia Circuit provided an adequate basis for its decision, 383 U.S. at 556, 86 S.Ct. at 1055, the Supreme Court went on to hold:

[W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a

5. Footnote 3, *supra.*

statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel. 383 U.S. at 557, 86 S.Ct. at 1055.

. . . .

With respect to access by the child's counsel to the social records of the child, we deem it obvious that since these are to be considered by the Juvenile Court in making its decision to waive, they must be made available to the child's counsel. 383 U.S. at 562, 86 S.Ct. at 1057.

In *State ex rel. T.J.H. v. Bills,* 504 S.W.2d 76 (Mo. banc 1974), the Supreme Court of Missouri applied *Kent* as establishing a constitutional due process requirement that an order of a juvenile court waiving juvenile jurisdiction contain an adequate statement of reasons for such decision. *Id.* at 80. In *Bills,* a juvenile court undertook to waive jurisdiction over a juvenile, but the order set forth no findings or reasons for such decision. The Supreme Court of Missouri held the order was insufficient to transfer jurisdiction from the juvenile court to the magistrate court. *Id.* at 79[5]. Consequently, the Supreme Court, by prohibition, barred the magistrate from exercising jurisdiction over the juvenile. *Id.* at 83.

Relator equates the circumstances here with those in *Bills,* arguing that a juvenile's right of access by his lawyer to the report required by § 211.071.6 prior to the waiver hearing is as important a constitutional right as the requirement that the waiver order set forth the reasons for the decision to waive. Relator asserts:

The defect in [*Bills*] was the failure of the juvenile court's dismissal order to state the reasons for its ruling, as mandated by the United States Supreme Court in *Kent, supra.* The constitutional defects found on the face of the record in this case likewise warrant the requested absolute writ of prohibition.

Respondent counters by asserting Relator failed to file a motion in the trial court challenging the September 6, 1988, order of the juvenile court prior to entering the pleas of guilty October 20, 1989. Therefore, says Respondent, Relator "has waived any objection to alleged defects in the certification process."

Respondent cites *Wilkins v. State,* 802 S.W.2d 491, 496–97[1] (Mo. banc 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991), and *State v. Owens,* 582 S.W.2d 366, 374[2] (Mo.App.1979), for the proposition that an accused who has been transferred from the jurisdiction of the juvenile court to a court of general jurisdiction may attack the juvenile proceedings by a motion in the trial court seeking dismissal of the information or remand to the juvenile court, and that failure to do so constitutes a complete waiver of any objection to the juvenile proceedings.

On the facts here, *Wilkins* and *Owens* are inapplicable. This Court's order of July 8, 1991, in appeal 17210 allowed Relator to withdraw his pleas of guilty. The effect of withdrawal of a plea of guilty is to restore an accused to the position he occupied before entering such plea. *State v. Patrick,* 816 S.W.2d 955, 958[3] (Mo.App. 1991); *State v. Begley,* 534 S.W.2d 632, 635[6] (Mo.App.1976).

Respondent does not aver Relator has pled anew, and Relator states he has not done so. Exhibits attached to Relator's petition show that since remand on July 8, 1991, he has attacked, in the trial court, the September 6, 1988, order of the juvenile court on the same basis as he attacks it in this prohibition proceeding. We therefore reject Respondent's argument that Relator has waived the alleged defect he asserts here.

We are thus required to decide whether the failure of the juvenile court here to obtain the report required by § 211.071.6 prior to the hearing of September 2, 1988 (thereby preventing lawyer D—— from seeing the report before the hearing) is a flaw so severe that the order of September 6, 1988, waiving juvenile jurisdiction over Relator is a nullity.

We emphasize the question is not whether the juvenile court committed error which, if preserved for appellate review,

may render the September 6, 1988, order vulnerable on appeal if Relator is ultimately convicted.[6] Instead, the issue is whether the defect complained of by Relator is so egregious that, like the one in *Bills*, 504 S.W.2d 76, it invalidates the juvenile court's relinquishment of jurisdiction.

Relator cites no Missouri case in which an appellate court has, by prohibition, barred a court of general jurisdiction from proceeding with a criminal case against a juvenile because the juvenile's lawyer was not furnished a copy of the report required by § 211.071.6 prior to the juvenile court waiver hearing. The only Missouri prohibition case cited by Relator where an appellate court barred a court of general jurisdiction from proceeding with a criminal case against a juvenile because of a juvenile court error in a waiver proceeding is *Bills*. As we have seen, prohibition was granted there because the juvenile court's order relinquishing jurisdiction did not set forth findings stating the basis for its decision, and was consequently insufficient to transfer jurisdiction to the magistrate court. 504 S.W.2d at 79[5]. The narrow ground for prohibition in *Bills* is explained in this passage:

> There is no danger, as respondent fears, that our holding that a writ of prohibition is available to relator in this case will nullify our decision in *In re T.J.H.* [479 S.W.2d 433 (Mo. banc 1972)], by making available through use of the extraordinary writs appeal which we there foreclosed. In the case at hand a writ of prohibition is' available because relator has shown that the magistrate court is without jurisdiction to proceed further in the case. The juvenile court's order relinquishing jurisdiction did not set forth findings stating the basis of its decision and consequently was not sufficient to transfer jurisdiction to the magistrate court. The writ of prohibition goes to the sufficiency of the order to transfer, not to its correctness. The situation presented is unique and is unlikely to reoccur after our decision in this case. A juvenile court order transferring a juvenile for prosecution under the general law, which is supported by findings in compliance with our holding in this case, will pass jurisdiction of the cause to the adult court and will not be subject to attack on the present grounds by a writ of prohibition.

504 S.W.2d at 79[5].

The only other instance we find where a Missouri appellate court, by prohibition, barred a trial court from trying a criminal case against a juvenile because of a flaw in the juvenile court waiver proceeding is mentioned in *Owens*, 582 S.W.2d at 369. *Owens* was a direct appeal by the accused from his trial court conviction; however, the opinion mentions a prohibition proceeding wherein this Court, in an unreported adjudication, issued a writ of prohibition barring the trial court from proceeding with the case. The basis for the writ, according to *Owens*, was that the reasons given by the juvenile judge for relinquishing jurisdiction were "insufficient under the case law of this state."[7] *Id.* After the writ, the accused was remanded to the juvenile court, new pleadings were filed there, and a new hearing was held by a successor judge. Juvenile jurisdiction was again relinquished, the accused was tried

---

**6.** We learn from *In re T.J.H.*, 479 S.W.2d 433, 434–35 (Mo. banc 1972), that no appeal lies from an order of a juvenile court relinquishing jurisdiction over a juvenile so he can be tried under the general law. The method of review is by motion in the trial court to dismiss the information or remand to the juvenile court for a proper hearing. *Id; Wilkins*, 802 S.W.2d at 496[1]. If the trial court denies such a motion and the accused is convicted, the trial court's ruling is reviewable on appeal from the conviction, assuming the issue is preserved. Such review occurred in *State v. Seidel*, 764 S.W.2d 517 (Mo.App.1989), where the accused's sole point on appeal was that the juvenile court's decision to relinquish jurisdiction and allow prosecution under the general law was unsupported by the evidence and was an abuse of discretion. Appellate review by the same procedure occurred in *State v. Mouser*, 714 S.W.2d 851 (Mo.App.1986); *State v. Tate*, 637 S.W.2d 67 (Mo.App.1982); *Owens, supra*, 582 S.W.2d 366, and *State v. Kemper*, 535 S.W.2d 241 (Mo.App. 1975).

**7.** The findings now required in a juvenile court order relinquishing jurisdiction so a juvenile can be prosecuted under the general law are set forth in § 211.071.7, footnote 3, *supra*.

and convicted, and his appeal from the conviction was *Owens,* 582 S.W.2d 366.[8]

We acknowledge it may have been error—perhaps even of constitutional dimension—for the juvenile court here to hold the hearing before the report required by § 211.071.6 was available to lawyer D____. It may also be that such error was waived when lawyer D____ failed to object at the start, and at the end, of the hearing, as reported earlier. It may also be that lawyer D____ rendered ineffective assistance by that omission. Relator, at the appropriate time, may or may not be able to demonstrate he was prejudiced by such omission. However, it is unnecessary to decide any of these issues in adjudicating the instant prohibition proceeding, and we express no opinion about them.

All we need decide—and all we do decide—is whether the juvenile court's order of September 6, 1988, relinquishing jurisdiction of Relator is void because the report required by § 211.071.6 was not prepared and made available to lawyer D____ before the September 2, 1988, hearing.

Mindful of the caveat in *Bills,* 504 S.W.2d at 79[5], that the writ there went to the sufficiency of the juvenile court's order relinquishing jurisdiction, *not to its correctness,* we hold the flaw complained of here by Relator did not strip the juvenile court of power to relinquish jurisdiction over Relator. That is, the juvenile court did not divest itself of authority to waive jurisdiction over Relator by proceeding—arguably erroneously—with the waiver hearing before the report required by § 211.071.6 was prepared. If the juvenile court indeed erred in proceeding that way—an issue we do not decide—and if Relator is ultimately convicted and preserves the issue for review, it can receive appellate review on direct appeal from the conviction. In that regard, we note a challenge to the adequacy of a juvenile officer's written report in connection with a waiver proceeding was raised by the accused on direct appeal and addressed by the appellate court in *State v. Kemper,* 535 S.W.2d 241, 246[6] (Mo.App.1975).

In conclusion, one might wonder why any of this matters, as Relator is now 19 years of age. In *J.O.N. v. Juvenile Officer,* 777 S.W.2d 633 (Mo.App.1989), a juvenile age 16 was accused of assault by a petition in the juvenile court. Before the issue was tried in that court, the juvenile reached age 17. He thereupon moved the juvenile court to dismiss the petition, arguing the juvenile court lost jurisdiction over him when he turned 17. The juvenile court denied the motion, conducted an evidentiary hearing, and found the juvenile to be within its jurisdiction. On appeal by the juvenile from that ruling, the Western District of this Court pointed out that under § 211.-031.1(3), RSMo 1986,[9] the juvenile court has exclusive original jurisdiction over "any person who is alleged to have violated a state law ... prior to attaining the age of seventeen years." The Western District held the statute vests exclusive original jurisdiction in the juvenile court over a person who, regardless of present age, is alleged to have violated a state law before reaching age 17. That is, "The jurisdiction of the juvenile court depends only upon the occurrence of the law violation before the violator was 17." 777 S.W.2d at 634. Therefore, even though Relator is now 19, any alleged error in the juvenile court waiver proceeding has not become moot and may, if preserved, be reviewed on appeal if Relator is ultimately convicted.

Emphasizing that our decision is limited to the narrow issue defined in this opinion, we hold our preliminary order in prohibition was improvidently issued. It is quashed.

PARRISH, C.J., and SHRUM, J., concur.

---

**8.** *Kemper,* footnote 6, *supra,* alludes to a prohibition proceeding at an early stage of the juvenile proceedings there; however, no details appear in the opinion. 535 S.W.2d at 244.

**9.** Section 211.031 has since been amended, but the changes did not affect the provision relied on in *J.O.N.*